**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **MIGUEL ANTONIO MARTINEZ** | § | |
| Petitioner | § | |
| | § | |
| V | § | CIVIL ACTION NO: 7:11-CV-08–O-KA |
| | § | |
| USA | § | |
| Respondent | § | |

**REPORT AND RECOMMENDATION ON MOTION TO VACATE**

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts, this case was referred to the undersigned United States Magistrate Judge by Order of Reference (Docket No. 15) for hearing, if necessary, and proposed findings of fact, conclusions of law and recommendation for disposition.

Procedural Background[1]

Martinez was indicted along with codefendant's Edward Buck Izaguirre and Joe McDonald of the primary offense of Possession of a Controlled Substance (Cocaine) with an Intent to Distribute it. In secondary counts, codefendant Izaguirre was charged with three other counts including being a felon in possession of a firearm (2 counts/2 firearms) and possession of a firearm during and in relation to a drug trafficking crime. Martinez was not charged with a firearm offense.[2]

Pursuant to a plea agreement containing a waiver of his right to appeal and seek collateral review under § 2255, on August 27, 2009, Martinez pled guilty to conspiracy to possess with intent

---

[1] Docket References are to the original criminal case, Cause No. 7:09-CR-018 unless otherwise noted.

[2] Indictment, Docket No. 1.

1

to distribute more than 500 grams of cocaine.[3] In the factual resume[4] supporting his guilty plea, Martinez admitted to knowingly and intentionally conspiring with Edward Izaguirre and Joe McDonald to possess more than 500 grams of cocaine with the intent to distribute. The resume and the written plea agreement did not address any firearm enhancements. However, Martinez acknowledged the following in his plea agreement: (1) his statutory penalties were at least five years and up to 40 years in prison; (2) the Court would determine and consider the applicable Guidelines range; (3) the Court could impose any sentence up to the maximum; and (4) he could not withdraw his plea simply because the actual sentence was higher than he expected.[5] Martinez also waived his right to appeal or to seek collateral review under § 2255, with these exceptions: Martinez, however, reserved the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of his guilty plea or his waiver, and (c) to bring a claim of ineffective assistance of counsel.[6]

Following Martinez' plea of guilty, the Court was presented with a Presentence Report (PSR)[7] which included a section applying a 2-level firearms enhancement in calculating the applicable sentencing range under the guidelines. Martinez' attorney filed objections to that section of the PSR and the Court then received an Addendum to the PSR. On January 26, 2010, the Court

---

[3]     Docket. Nos. 1, 68, 71, 73.

[4]     Docket No. 67.

[5]     Docket. No. 68, pp. 3-4.

[6]     *Id.*, at 10.

[7]     A part of Docket No. 91, currently under seal.

sentenced Martinez to 78 months' imprisonment.[8]  Martinez did not appeal. On January 10, 2011, almost a year later but timely[9], he filed his first § 2255 motion. [10]

## Factual Background[11]

On March 6, 2008, a drug deal among Martinez, Izaguiree and McDonald involving 755+ grams of cocaine for $17,000.00 went down at Izaguirre's residence at 4705 Eden Lane.[12]  At the time of the trade Izaguirre had a .38 caliber revolver with ammunition in a cardboard box in the kitchen in the house.[13]  Martinez brought the cocaine to the house. McDonald brought the cash.[14] Izaguirre got the cocaine.[15] Martinez left with most of the cash.[16] Martinez claims he did not know about the gun. By and incident to his own plea of guilty, Izaguirre acknowledged that he possessed the firearm during and in relation to the drug trafficking offense.[17]  Martinez claims the PSR showed that he was in the garage and not in the house where the firearm was found in a cardboard box the kitchen.[18]

---

[8]   Docket. No. 84.

[9]   See 28 U.S.C. § 2255(f)(1).

[10]   Docket. No. 88, which was opened as a civil case herein.

[11]   Unless cited from a different source, the facts recounted are contained in the presentence investigation report ("PSR") or the factual resume supporting Martinez' guilty plea (Docket. No. 67).

[12]   PSR, pp. 4-6.

[13]   *Id*., p.6, ¶ 20.

[14]   *Id.,* p. 4, ¶ 16.

[15]   *Id.,* p. 6, ¶ 19.

[16]   *Id*., p. 5. ¶ 17.

[17]   Izaguirre Factual Resume, Docket No. 27, p. 5.

[18]   Memorandum, Docket No. 2, p. 2.

Petitioner's Alleged Grounds for Relief

By his Motion and Response, Martinez asserts two related grounds for relief:

1. That he was deprived of his Sixth Amendment right under the Supreme Court's decision in *Booker*[19] to a jury trial on the issue of his possession of a firearm that was used by the judge in imposing a two-level enhancement of his sentence.[20]

2. That his trial counsel rendered ineffective assistance by failing to advise Martinez to appeal his case based on the foregoing ground.[21]

Government's and Martinez' Responses

The government's response to Martinez' claims is that Martinez is bound by his express voluntary waiver of his right to file a direct appeal and his right to file a §2255 Motion to Vacate and therefor is procedurally barred from asserting his claims. After the government filed its Response (Docket No. 11) raising the issues of waiver and procedural bar, Martinez filed his Response/Objection (Docket No. 12) wherein for the first time Martinez raised an issue of ineffectiveness of counsel in failing to appeal his case on the Sixth Amendment Ground. The government has not responded to this claim. Martinez further filed a pleading denominated "Notice of Request to Supplement and Supplemental Offer of Proof for Mandatory Judicial Notice (Docket No. 13). Appended to that Notice was a purported affidavit[22] from Izaguerri claiming that the firearm was his and that "I have no doubt co-defendant Martinez had no prior knowledge of any

---

[19] *U.S. v. Booker*, 125 U. S. 738 (2005).

[20] Docket No. 2.

[21] From his Response and Objection (Docket No. 12) and Notice of Request to Supplement (Docket No. 13).

[22] The affidavit is suspect because it reflects three different handwritings including several clear insertions in the body of the statement (the name entry, the "have no doubt" entry, and the signature).

4

firearms possessed on my person or property."[23]

Standard for Review of § 2255 Claims

As reflected in the government's Response, 28 U.S.C. § 2255 provides four circumstances under which a federal prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." *United States v. Placente*, 81 F. 3d 555, 558 (5th Cir. 1996) (internal marks omitted). "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184, 99 S. Ct. 2235, 2240, 60 L. Ed. 2d 805, 811 (1979). In determining whether a claim of error is cognizable under Section 2255, a distinction is drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other. *Placente* at 558; *Grimes v. United States*, 607 F.2d 6, 10-11 (2d Cir. 1979). Furthermore, a Motion to Vacate under § 2255 is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F. 2d 1033, 1037 (5th Cir. 1981).

Discussion

Sixth Amendment Claim

In his original Motion to Vacate and Brief (Docket Nos. 1 and 2) Martinez expressly alleged only a Sixth Amendment Constitutional issue of denial of a jury determination of sentencing facts. With respect to this argument, the Fifth Circuit and the other courts of appeals have repeatedly held that a district court may find the facts relevant to a defendant's Guidelines calculation by a

---

[23] Notice, p. 8.

preponderance of the evidence, without the aid of a jury. *United States v. Johnson*, 445 F. 3d 793, 2006 U.S. App. LEXIS 8510, 2006 WL 870499 (5th Cir. 2006); *Hall v. United States, 2010 U. S. Dist. LEXIS 2446 (N.D. Tex. 2010); United States v. High Elk*, 442 F. 3d 622, 626 (8th Cir. 2006); *United States v. Garcia,* 439 F. 3d 363, 369 (7th Cir. 2006)*; United States v. Cooper*, 437 F. 3d 324, 330 (3d Cir. 2006); *United States v. Holguin*, 436 F. 3d 111, 119 (2d Cir. 2006); *United States v. Yeje-Cabrera*, 430 F. 3d 1, 17 (1st Cir. 2005); *United States v. Morris*, 429 F. 3d 65, 72 (4th Cir. 2005); *United States v. Chau,* 426 F. 3d 1318, 1324 (11th Cir. 2005); *United States v. Magallanez*, 408 F. 3d 672, 684 (10th Cir. 2005).

In *United States v. Mares*, 402 F. 3d 511 (2005) the Fifth Circuit stated "**Booker** contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not **impede** a **sentencing judge** from **finding** all **facts relevant** to **sentencing**. The **sentencing judge** is entitled to find by **a preponderance of the evidence** all the **facts relevant** to the determination of a Guidelines sentencing range . . . ." *Id*. at 518 (citation omitted)." See also, *United States v. Johnson*, *supra*, at 798; *United States v. Duhon*, 541 F.3d 391, 396 (5th Cir. 2008); *United States v. Cisneros-Gutierrez*, 517 F. 3d 751, 766 (5th Cir. 2008).

The district court may adopt the facts contained in a [presentence report] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable. *United States v. Trajillo*, 502 F. 3d 353, 357 (5th Cir. 2007). The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." *Id*.

So, if the fact findings of the sentencing judge as to Martinez' possession of the firearm were

6

supported by the evidence and by the factual findings contained in the PSR, Martinez' would have no claim for appeal or for § 2255 relief as a matter of law and without any hearing. And Martinez' trial counsel's failure, if any, to discuss or initiate an appeal on that ground could not have been a deficiency in his representation.

"Possession" Finding

The original PSR recounted the following facts as establishing Martinez' "possession" of the firearm:

1. "Surveillance teams observed **Martinez** and McDonald both arrive at Izaguirre's residence at approximately 8 a.m., on March 6, 2008. **Martinez** was accompanied by Chris "Chip" Grantham when he arrived at Izaguirre's residence. Prior to the arrival of McDonald, **Martinez** entered the interior garage area if Izaguirre's residence out of sight of McDonald." PSR at ¶ 16.

2. "McDonald, who was unaware that **Martinez** and Grantham were in the garage portion of the residence, was advised by Izaguirre to leave the residence...." *Id*. at ¶ 16.

3. "Additionally, after Martinez, McDonald and Grantham had left 4705 Eden Lane... officers from the WFPS Narcotics Unit executed a search warrant for the residence....*Id*. at ¶ 19.

4. "... Inside the residence....a live 7.62x25-caliber ammunition cartridge was observed on the bar area of the kitchen in plain view. A cardboard box was located on the kitchen floor of the residence and found to contain a loaded Armscor, Model 206, .38-caliber six shot revolver...Over 250 rounds of assorted ammunition was also found in the cardboard box, including...82 rounds of .380-caliber ammunition.... Two additional handgun cases were also found in the cardboard box where the revolver was recovered." *Id*. at ¶ 20.

5. "Just prior to the search, Martinez had been in the residence to conduct the drug transaction...prior to the arival of McDonald, Martinez, accompanied by Grantham, arrived at Izaguirre's residence, entered the interior garage area of the residence out of sight of McDonald." *Id.* at ¶ 27.

Relying on these fact findings and upon the Fifth Circuit Court of Appeals' decision in *United States v. Aguillera-Zapata*, 901 F. 2d 1209 (2010), the original PSR countenanced

application of the 2-level enhancement under USSG § 2D1.1(b)(1) for firearms possession "because Martinez was present in the house at the same time as the firearm, and he was involved in a drug transaction (providing approximately three-fourths of a kilogram cocaine to Izaguirre as a part of the drug transaction." PSR at ¶ 27.

Prior to sentencing, Martinez' attorney filed objections to the PSR including specifically, an objection to the critical PSR paragraph 27 because "there is insufficient, non-excludable evidence"[24] in the Presentence Report to add the 2-level enhancement for possession of a dangerous weapon (including a firearm) when calculating the appropriate guideline sentencing range.  Martinez' objection affirmatively asserted that while the PSR stated that Martinez "entered the interior of the *garage* area," it "failed to indicate that defendant ever entered the residence other than the *garage* area."(emphasis supplied).  And although the PSR noted the location of the cocaine in the trunk of a car in the backyard of the residence, it did not indicate when or by whom it was placed there. Martinez' objection further noted that the PSR failed to name the owner of the firearm and whether the cardboard box was open or sealed.[25]

Replying to Martinez' objections, in his Addendum to the PSR the preparer raised the legal argument that under the Fifth Circuit's holding in *Aguillera-Zapata*, 901 F. 2d 1209, 1990 U.S. App. LEXIS 7528 (1990), in conjunction with USSG § 1B1.1(a)(1), and its commentary, a sentencing court may hold a defendant accountable for a co-defendant's "reasonably foreseeable" possession

---

[24] The "non-excludable" evidence related to Martinez' assertion that much of the factual information recited in the PSR was "based upon a source of information obtained upon a promise of confidentiality, a confidential informant" and hence could not support factual findings that would support the application of the 2-level firearms enhancement.

[25] From the Addendum to PSR, Section III, pp. 3-4.

8

of a firearm during the commission of a narcotic's trafficking offense pursuant to USSG 2D1.1(b)(1).

> In *Aguillera-Zapata* the Fifth Circuit Court of Appeals Court said:
>
> "In light of section 1B1.3(a)(1) and its commentary, we agree with White that sentencing courts may hold a defendant accountable for a co-defendant's reasonably foreseeable possession of a firearm during the commission of a narcotics trafficking offense, pursuant to section 2D1.1(b)(1). Accord United States v. Williams, 894 F.2d 208, 211-12 (6th Cir. 1990). The burden of proof in this respect is on the government under a preponderance of the evidence standard. See Burke, 888 F.2d at 869 ("Insofar as section 2D1.1(b) . . . would enhance the defendant's sentence, the burden of proof is on the prosecution to satisfy the factual prerequisites of the provision" by a preponderance of the evidence.). However, as the court in White noted and this Court has repeatedly observed, " firearms are 'tools of the trade' of those engaged in illegal drug activities." United States v. Martinez, 808 F.2d 1050, 1057 (5th Cir.), cert. denied, 481 U.S. 1032, 107 S. Ct. 1962, 95 L. Ed. 2d 533 (1987); see White, 875 F.2d at 433. Sentencing courts, therefore, may ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense by jointly engaging in concerted criminal activity involving a quantity of narcotics sufficient to support an inference of intent to distribute."  p. 1216.

In considering whether a defendant is personally "in possession" of a firearm" during or in relation to a drug trafficking offense some courts have considered *spatial and temporal factors* to distinguish between possession or non-possession of the firearm by the defendant. In *United States v. Hooten*, 942 F. 2d 878 (5th Cir. 1991) the Court found that a *spatial* disconnect between the back porch of the residence where the gun was found and the shed where the amphetamine was being manufactured could prevent an inference of the defendant's possession of the gun. In consequence, the Court remanded the case back to the sentencing court for a fact finding hearing.  In *United States v. Zapata-Lara*, 615 F. 3d 388 (2010) the Fifth Circuit found a lack of *spatial* relationship where the gun was fifteen feet from the defendant and the drugs and was inside an appliance in

.

another structure on someone else's property prevented the inference that the defendant possessed the gun. But neither *Hooten* nor *Zapata-Lara* involved a codefendant's admitted possession of the firearm in furtherance of the very drug transaction that was a part of the conspiracy at that codefendant's residence. See also, *United States v. Vasquez*, 874 F. 2d 250 (5th Cir. 1989) involving a temporal and spatial disconnect between the firearm and the place of the drug transaction. The Guidelines themselves recognize a *temporal* and an *activity* disconnect between the firearm and the drug transaction may avoid the application of the firearm enhancement. See § 2D1.1(b)(1) commentary "for example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."

In this case, the PSR outlined the facts of the drug transaction in great detail together with the facts of Martinez' own active involvement in the transaction that was culminated at the Izaguirre residence. At Martinez' sentencing the Court had judicial knowledge that codefendant Izaguirre had already plead guilty to the firearm possession charge in relation to the firearm at his residence during the drug transaction there. The court expressly accepted the findings of the PSR [26] that included the express findings that Martinez was present in the house at the same time as the loaded firearm and was involved in a drug transaction (providing three-fourths kilogram of cocaine to codefendant Izaguirre as a part of the drug transaction.)[27]

At sentencing the District Court made the following express fact finding:

> "And then, finally, with respect to the enhancement for the gun in connection with the conspiracy, I've reviewed the information presented by the presentence report, and I find that Mr. Izaguirre possessed the .38-caliber handgun in connection with this drug conspiracy, and I find that this possession was reasonably foreseeable to Mr. Martinez based upon the evidence presented in the presentence report, and so

---

[26]     Transcript of Sentencing, Docket No. 93, p. 6.

[27]     PSR p.

> I overrule this objection.
> I adopt the fact findings contained in the presentence report and the addendum. I adopt the probation officer's conclusions set forth in the presentence report as to the appropriate guideline calculations, and determine that the appropriate guideline calculations are as follows: A total offense level of 26; a Criminal History Category of II; an imprisonment range between 70 and 87 months; a supervised release range of between 4 and 5 years; and a fine range of between $12,500 and $2 million."[28]

The Court's express fact findings as to Izaguerri's possession of the firearm and the foreseeability of that possession by Martinez meets the criteria of *Aguillera-Zapata* to hold Martinez accountable for possession of the firearm.

Furthermore, I find that the facts recited in the PSR and found by the District Court by the sentencing adoption thereof reflect sufficient spatial, temporal and activity nexus between Martinez, the firearm, and the drug trafficking transaction as to support the District Court's express finding that Izaguirre's possession of a loaded firearm was reasonably foreseeable by Martinez. After all, "firearms are the drug traffickers' tools of the trade."[29] Petitioner's Sixth Amendment argument was and is therefor unavailing.

## Ineffectiveness of Counsel

On a § 2255 motion a defendant may raise the issue of the ineffectiveness of counsel in failing to initiate or pursue an appeal even where a defendant "has waived his right to direct appeal and collateral review." *United States v. Tapp*, 491 F. 3d 263, 266 (5th Cir. 2007).

To prevail on a claim of ineffective assistance of counsel, movant must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on such a claim, movant

---

[28] Docket No. 93, pp. 5-6.

[29] *United States v. Martinez, supra*, p. 1057; United States v. Perez, 648 F.2d 219, 224 (5th Cir. 1981), cert. denied., 454 U.S. 1055, 102 S. Ct. 602, 70 L. Ed. 2d 592.

11

must show that counsel's performance was deficient and that movant was prejudiced by counsel's errors. *Id.* at 687. The *Strickland* standard relating to the issue of ineffective assistance of counsel is applicable to a claim regarding an appeal. In *United States v. Tayler*,[30] the Fifth Circuit iterated: "It is well-settled that the failure to file a requested notice of appeal constitutes ineffective assistance of counsel even without a showing that the appeal would have merit." Citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 486, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). "[I]f the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." *Id*. (remanding for an evidentiary hearing as to the notice of appeal and implying that the requested appeal can be made by the defendant or a family member). See also, *United States v. Hereford*, No. 06-11004, 242 Fed. Appx. 251, 252 (5th Cir. Sept. 18, 2007) (per curiam) (citing Tapp, 491 F. 3d at 266)."

Though given written notice concerning his right of appeal,[31] Martinez makes no claim or argument that he, or anyone on his behalf, ever asked his attorney to appeal for any reason, much less on the Sixth Amendment Ground. Indeed, Martinez never directly claims or asserts that his plea of guilty was not voluntary. Although a defendant need not "establish prejudice," a defendant must at the very least allege that he, or someone on his behalf, timely requested counsel to initiate an appeal, or allege that counsel failed to confer at all with the defendant regarding an appeal. This

---

[30] 270 Fed. Appx. 363, 366, 2008 U.S. App. LEXIS 6165 (2008).

[31] Docket No. 83.

Martinez has not done. Even assuming that he made such a request, then as reflected above such an appeal would have been unavailing. Denial of his motion on this ground alone would be in order.

For all of the foregoing reasons both procedural and on the merits, I recommend that Petitioner's Motion to Vacate be DENIED.

### Standard Instruction to Litigants

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 25th day of November, 2013.

*Robert K. Roach*
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE